Good morning, Your Honor. I'm Mark Ryan on behalf of Cargill. I'd like to try to reserve four minutes of my time for rebuttal. The District Court committed reversible error in this case by admitting evidence of irrelevant and unrelated litigation against Cargill by allowing the defendants to rely on privileged and litigation strategy evidence that also was wholly irrelevant and was used to attack Cargill's motives for the litigation. The Court further erred by sending a bad-faith claim to the jury, which was defective as a matter of law. Cargill was severely prejudiced at the time. The issue of waiver on the bad-faith claim, Your Honor, is did we argue that it could never go to the jury, that it's an issue for the Court? We did not argue that. What we did not waive was the — were two issues. One issue was, was there sufficient evidence to send the case to the jury? Could a reasonable juror return a bad-faith decision against Cargill? And here's — and here's why we made that motion, Your Honor. In order to prove bad faith, they had to prove objective speciousness and subjective speciousness. Objective, as they were instructed, is a complete absence of facts supporting Cargill's claim. Now, there's no way — the trade secrets claim. There's no way to read this record and to say there's a complete absence of facts in support of Cargill's trade secrets claim. That's what they needed to show. That was the first element that they needed to show to get to the jury on bad faith. That should have ended the inquiry right there. There was — and we've described it in our briefs. There was lots of evidence. They could dispute it. But the question on bad faith is whether there's any evidence, any facts. So if we were to disagree with your assessment of the facts, what would be the result, that you still did not argue that — that in your view, I guess it would have been a jury question, because all you were saying was there was insufficient evidence? Yes. Of course, Your Honor, and one of the confusing points here, of course, may be we won with the jury on the bad faith claim. The jury found it was not subjectively specious. Right. Our problem is it was used to smuggle in evidence and argument in closing that never should have been put in front of this jury. So what are you — you're really arguing about timing, aren't you? We're arguing about the impact that the Court's rationale for allowing that evidence in, bad faith, and allowing the jury argument to be made on bad faith, the impact it had on our claims. Because they argue things like this. Well, Cargill didn't settle. Didn't settle with these people. Cargill posted a complaint on its website. Cargill issued a press release. Cargill didn't send them a cease-and-desist order. We're all under the guise of bad faith. But they are relevant. All those arguments are relevant to bad faith, aren't they? No, I don't believe so, Your Honor. I think in this context, in the trade secrets context, California statute, and we cite the FAS Technologies case in our brief for this proposition, bad faith has a very specific meaning. It does not mean any ill will that Cargill might have had toward these defendants. What it means is, did Cargill have – is there evidence that Cargill itself believed that it had no basis for making a trade secrets claim? That's what bad faith is in the trade secrets context. None of that evidence, whether we settled with them, whether we sent them a cease-and-desist letter, none of that goes to the issue of our subjective state of mind with respect to whether we thought we had legitimate trade secrets. Their argument was simply, Cargill did a lot of things they shouldn't have done, and they didn't like us very much, and that's bad faith. That would open a hole in trade secret trials that you could drive a truck through, and we don't believe that that's the law. Now, back to our first point on error, the Acme and Burford litigation. This was unrelated litigation in this sense. It had nothing to do with trade secrets. It had nothing to do with the parties that were before the Court. Acme and Burford. And Burford is a set of allegations, Your Honor. Wait a minute. Was that the basis on which the Court allowed it, permitted that evidence to come in, that it was relevant to bad faith? No. Acme and Burford came in on the grounds that it was relative to two things, why they left Cargill and why they did whatever they did relevant to the lawsuit. That was the district court's language. So the two issues are not intertwined. In other words, if we agreed with you on the one that you started out on, it wouldn't necessarily follow that these – this evidence would be deleted from the case. It's an entirely different issue. It's just a different, completely separate issue. There are three separate arguments. It's related because some of the evidence is overlapping, but we have three separate arguments. Now, on the Acme and Burford case, the presentation to the jury was this. Hey, Cargill substitutes cheaper ingredients for better ingredients with its farmer customers. Set aside the fact that we deny that. But that was the claim. They're a bad company. They do bad things. Yeah, but the bare fact of acknowledging that there was separate litigation that was of concern to the parties that left Cargill strikes me as not necessarily irrelevant. Well, it's – You want this excluded under 403. We want it excluded under 401 and 403. It's – you have to take a step back and ask what does relevant mean. And relevant means does it make any issue material to the case more or less likely? And there's no justification defense here. Judge Bivey, if someone came in this – to court and said – the bank said our manager walked out with sacks of money, and we're suing the manager to get it back. And the defense was, you know, this is a bank that made a lot of subprime loans, took TARP money, pays its executives exorbitantly. None of that evidence. And we didn't like the bank. And they're suing me not because I took the money, but because they don't like me. I complained about these actions. You wouldn't pause for two seconds to say that was a legitimate defense. Well, it's not – it's not as plausible as it is here. That's the answer. But, yeah, the other point is that the Acme and Burford had allegations that were similar to the concerns that these parties had, that is, that Cargill was substituting ingredients and that farmers weren't aware that the product that they were buying may not have been the product they thought they had contracted for. But it had nothing to do with whether we had trade secrets or whether they were entitled to walk out the door with those trade secrets. No, but my recollection is, you know, the district judge's rationale is, well, you opened the door because you accused these people of leaving only for money. Well, that's what the district court said in his opinion after the trial. That's simply not right, because the way it worked, Judge Tshima, was we filed a motion in limine before trial saying no reference to Acme, no reference to Burford, no reference to ingredient substitution practices. He denied that. Now, at that point, those are the rules that he set. We made a brief reference in opening statement. We're allowed to do that. We're allowed to try to win the case under the ground rules that the judge has set without opening the door. The door was opened by the district court. He opened the door when he said, I am going to let them talk about Acme and Burford. Now, we did not talk about Acme and Burford. We simply offered one sentence on a possible alternative motive for their leaving, which the district court in his ruling on the motion in limine has said this is now in play. So the question is, so what if they didn't like Cargill? So what if they didn't like Cargill business practices? What has that got to do with taking property of Cargill when they leave the company? It's got nothing to do with it. And if any of it has to do with their motivations, presumably, the defendants' motivations, which were in issue in the litigation. Well, I think, Your Honor, the motivations for taking what does not belong to them is not a defense. And if we then get to the 403 analysis, imagine what this jury would say. This is classic 403, because 403, one of the things we review only for abuse of discretion, right? If the district court has laid out his 403 analysis, which he did not do, so that you can look at it and say, did he abuse his discretion in this balance? That the rule? So if someone simply – if someone makes an objection that says, I think a piece of evidence is unduly prejudicial or confusing under 403, and the district court says, I'm overruling that, we don't defer to that as an abuse of discretion because there's not an explanation added? If you can tell from the context what the judge's rationale is, then you give him some deferral. What case says that abuse of discretion review is limited in that way, that it isn't always abuse of discretion review under 403, providing that the evidence is relevant under 401? Those briefs – those cases are cited at page 25 and 26 of our blue brief, Your Honor, and I'll come back up with the name.  I'll look there. So it's abuse of discretion on 401, abuse of discretion on 403 if the judge has given you the basis for determining his analysis. Now, this is – this is classic 403 material because they're appealing to the emotion of the jury. This is what the strategy was. Caught with their hands in the cookie jar, they took a tact of saying, we're not going to defend simply on the grounds that Cargill didn't own trade secrets or we didn't take the trade secrets. We're going to defend on the grounds that Cargill is a bad company that does bad things. How much of the – how much of the evidence, in your view, surrounded the Acme and Burford trial? Well, I think – Or, excuse me, complaints. It bookended the complaint in the litigation in that opening statements cited in our case, closing arguments, and eight or nine witnesses were asked about Acme and Burford. It – it permeated the trial. And it had – Oh, this was a very long trial. That's one reason I asked. It was 11 days, I believe. It was 11 days, Your Honor. So there were witnesses just about every day, certainly in the beginning of the case. Now, the case that we referred to in our brief, Your Honor, is Enquist v. Oregon on abuse of discretion and – on 403 and when you apply abuse of discretion or de novo review. So this – this – this was front and center in the case. And how would you have us respond to this line of argument? Cargill's been sued in a class action in Louisiana, not found liable, no judgment, been sued for cheating its customers. Don't let – don't – don't give them the protection that the law affords them on their trade secrets. That is what the argument was. We haven't found any case in which this kind of unrelated litigation was wielded against the company in such an aggressive and blatant way. Usually the issue comes up, there's some relationship between the other litigation and – and the case at bar. And in Enquist, the Court discussed even under those circumstances, that is problematic. But here, the other litigation was – was brought to bear simply for purposes of emotion – emotional appeal to the jury. Now, I see I only have a couple minutes left, so I'd like to reserve that, but I'm happy to – You may. You absolutely may. Thank you, Your Honor. We'll hear from Mr. Ehrlich. Thank you. May it please the Court, Jeffrey Ehrlich for the defendants, Progressive Dairy Solutions, Boudin, Jonkman, and Sundberg. I'd like to cut right to what I see as the Achilles' heel of Cargill's appeal. And that is, they have not appealed on the grounds that there is not sufficient evidence here to support the jury's verdict. In other words, they've said that a reasonable jury, hearing all the evidence, could rule just as this jury did. Their appeal is that this was not a reasonable jury. This was an inflamed, overly passionate jury. And so that's – in order to prevail, they have to convince the Court of this verdict as the result of passion and prejudice. And I don't think the record – Well, there's – all they have to do is demonstrate that there were significant evidentiary errors that prejudiced them. That's the standard for evidentiary error. They have to show that there was a taint here. Right. Right. And I don't think – So the fact that bad evidence plus good evidence together suffice to support a verdict doesn't really say anything about what kind of result you would have if their bad evidence went away. I don't understand your premise. I just – the premise is that there is evidence here. We have some evidence in the record of how the jury viewed this case, which I think makes clear that this was a verdict that was not the result of passion or prejudice. And specifically, we have the verdict form. The problem for Cargill is the verdict form itself. It was a long, complicated verdict form, and it asked the jury to make a number of fairly distinct findings. And I think that when you go through the jury form, which is in the record – excerpt of record at volume one, starting at page 31, you see that this was not a jury that was really wielding torches and pitchforks and was really – had it in for Cargill. They made some very clear distinctions. So, for example, the biggest problem for Cargill is that the jury was asked on the issue of bad faith. The jury was said, please make two findings. Was Cargill's trade secret claim objectively specious, had no basis in the evidence whatsoever? The jury finds, yes, it's objectively specious. Then they're asked to make a second finding. Do you find that Cargill knew that it had no evidence, that it was acting – that Cargill was acting in bad faith in presenting this case? And the jury says, checks the box, no. That's not what Cargill believed. And to my way of thinking, when a jury is inflamed by passion and prejudice, and they're given the opportunity to make the kind of finding that this bad faith finding asked the jury to make, do you find that this defendant acted – I'm sorry, this plaintiff acted, you know, with a subjective bad faith even after you found that there was no evidence whatsoever to support the claim? And the jury says, no, that's not the mark of an inflamed jury. Justice, I'll tell you what bothers me most about the trial is that part of this had to be tried to the jury, and part of it had to be tried to the district court. And there was evidence that was relevant only to that portion of the – that was going to be tried by the district court that was let in before the jury, that turned out to be some fairly inflammatory evidence, particularly the evidence about Cargill's litigation motives and so forth. Your pointing to the verdict is actually very helpful, I think, to your case, because it does suggest that the jury didn't pay any attention to that. But it does seem improper to me that a jury would have heard evidence that was not relevant to its claims, that was inflammatory evidence that was only going to be decided on by the district court. Well, Your Honor, Judge O'Neill dealt with this argument in the – in the – his ruling on the new trial motion. And he explained that, you know, the claim under California Business and Professions Code, Section 17200, which is the equitable claim that the Court is hearing, that through the pretrial conference, there was no motion to bifurcate. There was nothing in the pretrial. Cargill never said, Your Honor, there's going to be a 17200 claim here, and you have to bifurcate this and try it separately so that it's – Well, they did kind of say that. There's a – there was a discussion, as I recall it, where the counsel said, well, this should be done like punitive damages, wait until you determine whether there's liability, then bring the jury back. My recollection of the record, Judge Graber, is that that discussion was with respect to how do we do the bad-faith claim, not the 17200 claim. Judge O'Neill said – That may be right. I haven't got back to this. I believe that that's what the record shows, is that their discussion of, well, how do we – I'm not to digest here, so I may be misremembering that. There is. But I think that's a fair point for the district judge to say that if Cargill doesn't come before the Court, you know, at the pretrial and – or make a timely motion to bifurcate, pointing out that there's this potential, but you can't go through the trial and then suddenly on appeal turn around or in a new trial motion and say, you should have held two separate trials instead of having one trial of the integrated facts of whether the counterclaim is going to be heard with the initial claim. So I think that also the verdict form – I want to make clear while I have time that there were other parts of the verdict form, not just the bad-faith question, which I think isolates it very well, but that this jury was very thoughtful as they worked through the verdict form. You have to compare the answer of Part I of the form, the first question, which says, did Cargill own information related to its dairy business that's a trade secret? And the jury says, no. That's on page 30 of Volume I of the Excerpts of Record. They're asked a very similar question on page 6 – I'm sorry, Part VI, Question 1. Did Cargill own information and or trade secrets related to its dairy business? Yes. And that's on page 34 of the excerpts. This line of argument about, you know, the thoughtfulness of the jury, I assume, goes to the issue of, well, maybe the judge shouldn't have let some evidence in that could be considered prejudicial, but obviously it didn't prejudice this jury. Is that the argument? That's exactly right. Ultimately – and I'm not going to concede. I guess I just wanted to lead with my best argument, which is that at the end of the day, their whole appeal is grounded on this idea that because the jury heard about the Acme case and the Burford case, that they were whipped into a frenzy to really dislike Cargill, and therefore they could not objectively evaluate all the evidence before them. And my belief is, is that there isn't any evidence that that's what happened here, that there was plenty of evidence to support what the verdict did. It's not an outrageous runaway verdict. So the record supports the jury going either way. And the record, when you look at it, suggests that this jury wasn't out to get Cargill. They didn't take every opportunity to rule against Cargill on every question. They went through the verdict form and made the calls that they thought they were required to do, which is what a jury is supposed to do. And there's simply no evidence of this passion and prejudice that Cargill complains of. I mean, that's the argument that I think. So with respect to whether there was error in the first instance and what the standard review is, I think it's abuse of discretion. I think that the Ancus case, which Judge Toshima wrote, says, but acknowledges that if the record seems, as a whole, seems to show that there was balancing on the 403 question, it's still an abuse of discretion. Now, I admit that when the motion in limine came up, the Court just ruled on the motion and didn't specifically say on the one hand, I find this, on the other. But I think that the record overall does show balancing. The Court, in ruling on the motion in limine, didn't just say it's denied, it can come in for all purposes. The judge limited at the beginning the purposes that that evidence could be used for. And then as the course of the trial progressed and the Court had a concern that maybe the defendants were pushing a little too far, and there were 403 objections continued to be made, the Court sustained it and said, counsel, stop. I don't want you to use the names of the cases anymore. Just refer to the substitution practices. So I think that there is sufficient balancing in the record overall to have abuse of discretion review. And even if it's not, I think that under de novo review, that the evidence is, there's a relevance here, that first of all, if you do in your opening statements, the trial judge didn't open the door. The trial judge says I'm not going to exclude this evidence, but the trial judge didn't put it in counsel's head when he stood up in opening statement and say that the reason that these people left was because of greed, a reason as old as the Hills. I mean, that was, if Cargill is going to make that argument, then the defense has the right to say no, and more particularly, I think even beyond that. This litigation was relevant to an explanation of sort of the context of why these defendants did what they did, what their experience was, why they went from being Cargill employees to having difficulties working at Cargill and had to form their own company. The testimony was that the dairy industry found out about these – this litigation and had concerns that they had to field, that they were fielding these concerns about crop substitution. It would have been a very artificial case to have Cargill just say, well, you can't ever explain where those concerns – you have to get up and testify that one day your customers all just started calling and asking about crop substitution. Now, I would concede that the general rule may be that you don't let – the district court doesn't let in other litigation, but in this context, first of all, as counsel has already argued, the relationship between the Burford and the Acme case in this case, they're not directly relevant. It's not a situation where Cargill is being sued in this case for exactly the same thing they were being sued for in Acme and Burford, and as the cases that Cargill relies on say, the danger is that the jury is going to think their work's already been done for them, and they're just going to defer on the prior jury verdict. That wasn't a possibility here. Second of all, this isn't a case where I think the nature of the fact that a civil suit was filed against Cargill in a class action relating to crop – these ingredient substitution policies or that there was a verdict in Idaho is just so inherently prejudicial that just the mere mention of it is going to send the jury, you know, into this rage. I mean, if you look at the testimony, it was put in the context of what happened in your situation at Cargill to the various defendants, and they're talking about, well, this came out, this was well known in the dairy industry, and I had to deal with it with my clients. And what's particularly important is this is not a case where Cargill got held liable for doing something particularly egregious that they denied that they had done and that they denied they ever did again. I mean, this goes to the core of the dispute between the parties is this ingredient substitution. Cargill touts that as a real benefit to the consumer. It's the nutrition-driven policies, and we give you consistent nutrition regardless of the cost. Keep your costs down. And there's evidence on the counter side, the defense side, that that's not such a good thing, that it affects palatability, and maybe the overall nutritional content's the same, but if the cows won't eat it, it's as if – so there is an evidentiary dispute that goes to it. But Cargill never denies that it's engaged in the very processes that are at issue. So I don't think this was nearly as prejudicial as possible. I think that when you look at the evidence, you know, it was always in the context of, well, there was a jury, I got questions about the jury, this verdict, or questions about the lawsuit. I think as my time wanes, I just want to say that with respect to submitting the bad faith claim to the jury, Cargill admits there's no law that says that's not an appropriate thing to do. They don't say it's – they admit it's a jury question. It seems to me that the Court has discretion. And once again, the fact that the jury ruled against the plaintiffs – I'm sorry, the defense – on the bad faith claim suggests that somehow the jury didn't get all caught up in this other evidence that was used to support it and somehow couldn't come to a rational view. They drew a line between an objective analysis of what – looked at objectively what Cargill was doing and Cargill's subjective motives, which they found were not bad faith or ill will. I just don't think that fundamentally there's any prejudice here that Cargill can rely on. And if you can overturn an 11-day jury verdict based on this kind of evidentiary issue, then I'm giving my appellate clients the wrong advice, because I just think this is clearly rulings within the Court's discretion, and there's no evidence here of this overwhelming passion or prejudice that tainted the verdict. Thank you, counsel. Mr. Ryan, you have some rebuttal time remaining. Thank you, Your Honor. Of course, no one here was in the jury room. So where do we look for evidence of prejudice? We look, I think, in a couple of places. One in – one is how extensively it was used. And the Hill case that we cite in our brief says how much did experienced trial counsel use this in front of the jury, opening, closing, eight or nine witnesses specifically asked about litigation, Acme and Burford that had nothing to do with the case. And then the jury comes back and says, we don't find any evidence of subjective bad faith here, which would seem to go – which would seem to encompass all of the questions about revealing Cargill's litigation strategy and posting it on the website and so forth. That does look like a discerning jury verdict, and it looks like it didn't affect the jury. I'll tell you why I think the verdict form is our point, not theirs. If you look at ER 14, which is the instruction on bad faith, and on objective speechlessness, that the instruction is a complete absence of evidence to support Cargill's claim. The jury came back and said there was a complete absence of facts, complete absence of facts to support Cargill's claim. I would submit to you, Your Honor, nobody could read the record, nobody could see the evidence of the millions of dollars that Cargill invests in trade secrets and think that that jury got it right when it said – But that's not an issue of prejudice. That's an issue of whether there was – I mean, it seems like two different things. You're saying they misunderstood that evidence, but that's different than saying that they – No, no, no. I'm sorry, Your Honor. We're not saying they misunderstood it. We're saying that no jury that was not inflamed against Cargill could have held that or the first question on the verdict form, which I believe is at ER 30, which is Cargill had no, zero trade secrets in connection with its business. Our position is – now, you have to ask yourself, because we don't have jurors testifying, we have to look, why do we think there was prejudice? And again, I'll repeat, the great use they made of evidence that they don't claim is relevant. They don't make any pretense in this Court that Acme and Burford were relevant. And then you look at what the jury did. Yes, there were some things that went our way on the jury form, the one on subjective. But on objective, you just can't square that with the record in this case. Now, it's not simply inflaming, by the way. It's also 403 protects against confusion and misdirection of the case. And I think the jury was confused on whether March 1, the day we filed the complaint, was the applicable date or some other date was for assessing the evidence that we put in front. And finally, I'll close by saying that the district court also erred by allowing them to use privileged information, the posting of the complaint on the website, the press release, letters to customers, that is clearly protected by Section 47 of the California Civil Code. Thank you very much. Thank you, counsel. We appreciate your arguments in this very interesting case. The case is submitted, and we will stand adjourned.
judges: Tashima, Graber, Bybee